# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# DOCKET NO. 1:16-CV-242

| | |
|---|---|
| BARBARA BOYCE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>EATON CORPORATION LONG )<br>DISABILITY PLAN, )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Lift the Stay on Discovery and Motion to Amend the Case Management Plan. [Doc. 25].

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Barbara Boyce ("Plaintiff") filed this action pursuant to 29 U.S.C. § 1132(a)(1)(B), after having exhausted her administrative remedies, seeking long term disability benefits under an Employee Retirement Income Security Act (ERISA) plan of her former employer, Eaton Corporation ("Eaton"). [Complaint, Doc. 1 at ¶¶ 3, 8; Answer, Doc. 6 at ¶ 8].

The Plaintiff's employment with Eaton began on November 20, 2000. [Doc. 15 at 32]. On September 29, 2009, the Plaintiff sustained a rotator cuff

injury while on duty at Eaton. [Doc. 15 at 21]. On June 18, 2010, after having received short term disability benefits for approximately seven months, the Plaintiff applied for long term disability benefits under the Eaton Corporation Disability Plan for U.S. Employees (the "Plan"),[1,2] as a result of the rotator cuff injury. [Id.; see Doc. 15 at 33].

On July 15, 2010, the Plaintiff's application for long term disability benefits was approved and on July 23, 2010, the Plaintiff began receiving these benefits. [Doc. 15 at 29-33]. Sedgwick Claims Management Services, Inc., ("Sedgwick") served as the Claims Administrator for the Plan during the times relevant in this matter. [See, e.g., Doc. 15 at 33; Doc. 18 at 365]. Sedgwick periodically reviewed the Plaintiff's long term disability benefits claim under the Plan. On August 21, 2015, Sedgwick advised the Plaintiff that it had completed one of these reviews and that, under the terms of the Plan, it found she was no longer totally disabled and that benefits would be

---

[1] The Plan reflects that the technical Plan Name is "Eaton Corporation Disability Plan for U.S. Employees," as alleged by Defendant in its Answer, [Doc. 6 at 1; Doc. 18 at 3, 552], and not the "Eaton Corporation Long Term Disability Plan," as named and alleged by the Plaintiff. [Complaint, Doc. 1 at 1]. It should be noted, however, that the name "Eaton Corporation Long Term Disability Plan" is used interchangeably with the Plan's technical name throughout the Administrative Record.

[2] In addition to the primary Plan document, [Doc. 18 at 356-375], the Plan also includes what it defines as Operative Documents, which "may include, but are not limited to, plan summaries, insurance agreements and other appropriate documents…." [Doc. 18 at 358]. These documents are collectively referred to herein as the "Plan."

2

terminated as of August 31, 2015. [Doc. 15 at 474]. Namely, it found the Plaintiff's condition no longer met the definition of "disability,"[3] as defined by the Plan. [Doc. 15 at 474]. Under the Plan, long term disability benefits end, for among other reasons, when the employee "no longer h[as] a covered disability under the Plan, as determined by the Claims Administrator." [Doc. 18 at 533].

On September 30, 2015, pursuant to 29 U.S.C. § 1133, the Plaintiff timely appealed the denial of benefits. [Doc. 15 at 477]. On March 15, 2016, Sedgwick advised the Plaintiff that the denial of her claim for disability benefits had been reviewed and that, "because the medical information in the file does not support the inability to perform any occupation, as defined by the Plan [ ], we have no alternative other than to reaffirm the denial of benefits for the period of September 1, 2015 forward." [Doc. 16 at 27-28]. On March 23, 2016, the Plaintiff notified Eaton that she was appealing the March 15, 2016 decision upholding the previous decision to deny her benefits. [Doc. 16 at 31]. Pursuant to ERISA, this level appeal was made to

---

[3] The Plan considers an employee "disabled" if, during months 1 through 23 after the onset of disability, the disability makes the employee "[t]otally and continuously unable to perform the essential duties of [her] regular position or any suitable alternative position with the Company," and/or at month 24 and beyond, the disability makes the employee "[t]otally and continuously unable to engage in any occupation or perform any work for compensation or profit for which [the employee is], or may become, reasonably well fit by reason of education, training or experience – at Eaton or elsewhere." [Doc. 18 at 529].

the Plan Administrator, which the Plan defines as the Eaton Corporation Health and Welfare Administrative Committee (the "Committee"). [Doc. 18 at 552]. Pursuant to the terms of the Plan, the Committee was required to give a "full and fair review" of the March 15, 2016 decision denying the Plaintiff's claim. 29 U.S.C. § 1133(2).

On June 15, 2016, after review of the March 15, 2016 decision was stayed for 21 days at the request of Plaintiff's counsel to allow for "additional time to consider submitting medical records" and after a 45-day extension for additional time for the Committee to conduct its review, the Committee upheld the denial of the Plaintiff's claim for long term disability benefits under the Plan. [Doc. 18 at 99, 104]. On July 15, 2016, after having exhausted her administrative remedies, the Plaintiff filed this action, seeking long term disability benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). [Complaint, Doc. 1 at ¶ 3].

On December 21, 2016, the Court entered a Pretrial Order and Case Management Plan ("Pretrial Order"), which provides, in pertinent part, "*[t]he parties agree that discovery is not required in this case.*" [Doc. 10 at 2 (emphasis added)]. The Administrative Record (the "Record") was filed on February 27, 2017. [See Docs. 15-18]. The Plaintiff represents that "on or about April 13, 2017, the Defendant provided Plaintiff with additional

4

documents which were not initially disclosed nor provided in the administrative record when the Defendant initially sent the record." [Doc. 25 at 1-2]. On May 30, 2017, in response to the parties' Joint Motion to File Supplemental Materials as Part of the Administrative Record ("Joint Motion"), [Doc. 32], the Court ordered these additional documents be filed within 7 days of the entry of that order. [Doc. 34].

The Supplemental Materials include the following: (1) a basic timeline of events relevant to the Plaintiff's injury and disability claim, [Doc. 33 at 5]; (2) a "Summary of Long Term Disability Claim Second Level Appeal" (the "Summary Report"), [Doc. 33 at 6-11]; (3) a document that reflects that attorney Patrick Egan ("Mr. Egan") was invited to a one-hour meeting and/or teleconference of the Committee to occur on May 13, 2016, regarding the "Boyce Disability Appeal" (the "Committee Meeting") and prior to which the "Claim Summary"[4] was to be sent to the Committee, [Doc. 33 at 12]; and (4) an e-mail dated April 21, 2016, from a litigation paralegal of Mr. Egan's firm, Benesch, Friedlander, Coplan & Aronoff LLP (the "Law Firm") to Nathaniel Bax, the Plaintiff's attorney, enclosing a blurred and incomplete copy of a

---

[4] It appears that the "Claim Summary" referenced in this document and the Summary Report are one and the same.

5

"Statement of Barbara Boyce" and requesting that Mr. Bax transmit another copy of the same. [Doc. 33 at 13-15].

On May 2, 2017, before the Joint Motion was filed, the Plaintiff filed the Motion now before the Court seeking to lift "the stay" on discovery imposed by the Pretrial Order and to amend the Case Management Plan in order to extend the dispositive motions deadline. [Doc. 25; see Doc. 10]. The Plaintiff contends, in light of the Supplemental Materials, "it has come to Plaintiff's attention that limited discovery is necessary in this case."[5] [Doc. 25 at 8]. The Plaintiff argues that the Supplemental Materials (1) raise additional questions regarding whether she received a "full and fair review" and (2) indicate that there may be a conflict of interest which caused the Committee to abuse its discretion in denying her claim for long term disability benefits.

In the instant Motion, the Plaintiff requests: (1) "the opportunity to perform limited discovery as to who prepared the [Summary Report], who reviewed the report, and who forwarded the report to Defendant's appeal committee," because "the summary calls into question 'the adequacy of the materials considered to make the decision,'" [Doc. 25 at 17, citing Champion v. Black & Decker (U.S.) Incorporated, 550 F.3d 353, 359 (4th Cir. 2008)];

---

[5] The Plaintiff filed proposed discovery requests as an exhibit to the Motion. [Doc. 30, Ex. C].

(2) discovery on "what process was taken and materials considered by the Defendant's appeal committee during the 30 minute [Committee Meeting],"[6] because this goes to whether the "Defendant's appeal committee carefully reviewed adequate materials, using a principled and reasoned process," [Doc. 25 at 17]; and (3) discovery "to determine how many other cases exist where Defendant's outside counsel has participated both in the appeal review process and subsequently represented Defendant in litigation," which "is necessary to show a pattern of behavior and, consequently, the extent of the conflict of interest and the extent of Defendant's conducting of reviews that conform with the requirements of ERISA." [Doc. 25 at 17-8]. Then, in her Reply Brief, the Plaintiff states she "is only seeking information about the conflict of interest, how it influenced the Committee's decision, and the process by which the Benefits Committee came to its decision," [Doc. 30 at 2], as well as "discovery on what exactly the appeals committee reviewed as it goes to the very heart of ERISA's promise that every claimant will receive a full and fair review." [Doc. 30 at 10].

---

[6] Without citation to the Record or otherwise, the Plaintiff contends that two different long term disability appeals were to be considered during the one-hour Committee Meeting and, therefore, concludes the duration of the Committee Meeting regarding the Boyce Disability Appeal must have been 30 minutes. [Doc. 25 at 17]. This appears to contradict the document in the Supplemental Materials that reflects Mr. Egan's possible attendance at the Committee Meeting, which shows a one-hour time slot allocated to the Plaintiff's appeal. [Doc. 33 at 12].

7

It appears there are two distinct, but related questions before the Court. First is the more general question of whether extra-record discovery should be permitted to enable a plaintiff to demonstrate that a plan administrator did not conduct a "full and fair review" of her claim. The second is whether and to what degree discovery can and should be allowed where a plaintiff seeks to establish that a plan administrator abused its discretion in denying benefits because of an alleged conflict of interest held by the plan's attorney.

## II.  STANDARD OF REVIEW

### A.  Discovery Issues

"District courts exercise broad discretion over discovery issues," Seaside Farm, Inc. v. United States, 842 F.3d 853, 860 (4th Cir. 2016), and our appellate courts "review[ ] discovery rulings only for an abuse of that discretion," Beckner v. American Benefit Corp., 273 Fed.Appx. 226, 232 (4th Cir. 2008) (citation omitted).  Furthermore, "[a] party is not entitled to discovery that would be futile…." Seaside, 842 F.3d at 860 (citing Rich v. United States, 811 F.3d 140, 146 (4th Cir. 2015)).

### B.  Underlying Benefits Decision

The standard for review of a benefits denial necessarily informs both the degree to which discovery may be permitted in this action generally and whether an alleged conflict of interest may be relevant to that review. When

8

plan language grants a plan administrator discretionary authority to make benefits decisions, review of benefits decisions is conducted under the abuse of discretion standard.  Carden v. Aetna Life Ins. Co., 559 F.3d 256, 260 (4th Cir. 2009) (citations omitted).  On the other hand, when the plan does not give the administrator discretion in its decision-making process, the benefits decision is reviewed *de novo*.  Under *de novo* review, the existence of a conflict of interest is not relevant and discovery intended to investigate such a conflict would be unnecessary and improper.  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see Seaside Farm, 842 F.3d at 860.  The Plan here grants the administrator, which is the Committee in this case, discretionary authority to make benefits decisions.  It provides, in pertinent part:

> **PLAN INTEPRETATION**
>
> Benefits under the Eaton Plans will be paid only if the Plan Administrator and/or the appointed Claims Administrator decides that the applicant is entitled to them under the terms of the Plan.  <u>The Plan Administrator and/or the Claims Administrator has discretionary authority to determine eligibility for benefits and to construe any and all terms of the Plan, including but not limited to any disputed or doubtful terms.</u>  The Plan Administrator and/or Claims Administrator also has the power and discretion to determine all questions arising in connection with the administration, interpretation and application of the Plan….

[Doc. 18 at 560 (emphasis added)]. Therefore, because the Plan gives Committee discretionary authority in making benefits decisions, the review of the benefits denial will be under the abuse of discretion standard.

## III. ANALYSIS

### A. Discovery in ERISA under Discretionary Review

In Booth v. Wal-Mart Stores, Incorporated Associates Health Welfare Plan, 201 F.3d 335 (4th Cir. 2000), the Fourth Circuit compiled a list of eight non-exclusive factors courts may consider in determining the reasonableness of a plan fiduciary's discretionary benefits decision:

> (1) The language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

201 F.3d at 342. "As is facially apparent, a district court in many cases may not be able to adequately assess a number of the Booth factors in the absence of evidence from outside the administrative record." Helton v. AT&T, Inc., 709 F.3d 343, 354 (4th Cir. 2013). Furthermore, the Fourth

Circuit "has long recognized that certain types of extrinsic evidence often are necessary for a court to assess whether an administrator abused its discretion in denying a plan member's request for benefits." Id. at 353.

Indeed, in her Motion, the Plaintiff contends that information revealed by the Supplemental Materials, specifically the Summary Report, the Committee Meeting, and the alleged conflict of Mr. Egan,[7] implicate three of the Booth factors: "(3) the adequacy of the materials considered to make the decision and the degree to which they support it, … (5) whether the decisionmaking process was reasoned and principled, … and (8) the fiduciary's motives and any conflict of interest it may have," respectively. With respect to the third and fifth factors, the Plaintiff argues discovery should be allowed to enable the Court to determine whether the Plaintiff received a full and fair review under the abuse of discretion standard. After the parties agreed that discovery was not necessary, as reflected in the Pretrial Order, the Defendant provided additional documentation to Plaintiff that undermined the basis for the Plaintiff's agreement that discovery was not necessary. Helton, under these circumstances, dictates that limited discovery be

---

[7] The alleged conflict of Mr. Egan is addressed separately in subsection B below.

allowed to enable the Court to conduct a proper review of the denial of the Plaintiff's long term disability benefits under Booth.[8]

## B. Discovery Specific to a Plan Fiduciary's Conflicts of Interest

Under the eighth Booth factor, a fiduciary's conflicts of interest may be relevant to the determination of the reasonableness of a fiduciary's discretionary decision. Booth, 201 F.3d at 342. Therefore, limited discovery to address this may be allowed. See Fresenius Medical Care Holdings, Inc. v. Brooks Food Group, Inc., No. 3:07CV14-H, 2008 WL 189869, at *3 (W.D.N.C. Jan. 18, 2008) (Horn, J.). "ERISA defines a fiduciary as one who 'exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of assets." Firestone, 489 U.S. at 113 (citing 29 U.S.C. § 1002(21)(A)(i)). ERISA requires that every employee benefit plan name one or more fiduciaries who are responsible for controlling and managing the operation and administration of the plan. ERISA, Section 402(a), 29 U.S.C. § 1102(a). The Plan in this case names the Committee as the fiduciary. [Doc. 18 at 362, Art. IV, § 4.1; Doc. 18 at 552].

---

[8] Given that the Court has before it only a motion to amend the Case Management Plan, rather than a motion to compel discovery responses, the Court need not examine each of Plaintiff's proposed discovery requests and rule on their individual suitability for the aforementioned purposes.

The Plaintiff contends Mr. Egan "may actually be a Benefits Committee member," [Doc. 30 at 3], and "respectfully submits that she is seeking discovery for a conflict of interest on the part of the fiduciary and not a service provider." [Id. at 7]. In support of her argument that Mr. Egan may be a Benefits Committee member [Doc. 30 at 3], the Plaintiff relies on a single page of the Supplemental Materials that reflects Mr. Egan was invited to attend a telephone conference on May 13, 2016, regarding the "Boyce Disability Appeal."[9] [See Doc. 33 at 12]. The Fourth Circuit squarely addressed this issue in Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170 (4th Cir. 2005),[10] when it rejected the plaintiff's argument that "a conflict of interest could be presumed from the attendance of [the attorney for the company sponsoring the plan at issue] at the Administrative Committee's meeting." 431 F.3d at 180. The Fourth Circuit made clear that the pertinent inquiry is not the conflicts of the administrator's *attorney* but the conflicts of

---

[9] In her reply brief, the Plaintiff references an "October 28, 2016 email from Bonnie Graff to the Defendant's appeal committee" and represents "there were only two committee members present with Mr. Egan: Gordon Harmon and Douglas Grossman-McKee," at this meeting. [Doc. 30 at 7]. The Plaintiff fails to provide a record citation for this e-mail and the Court sees no evidence of it in the Record or Supplemental Materials.

[10] Colucci was abrogated on other grounds by Champion, which recognized that "a conflict of interest is readily determinable by the dual role of an administrator or other fiduciary" in both evaluating and paying claims and such conflict "is considered as one factor, among many, in determining the reasonableness of the discretionary determination" by that administrator. Champion, 550 F.3d at 359. Champion, however, does not change or undermine Colucci's holding that the relevant inquiry is whether the administrator, as opposed to the administrator's attorney, operated under a conflict of interest.

13

the administrator.  Id.  As such, if Mr. Egan was simply attending the Committee Meeting as an attorney for the Plan or for Eaton, any conflicts of interest he held are irrelevant to this Court's review and not properly the subject of discovery.  On the other hand, if Mr. Egan was an actual Committee member, any conflicts of interest he held would be one factor relevant to evaluating whether the Committee abused its discretion in denying the Plaintiff's benefits.  "[O]ne can envision many circumstances in which a court would need to look to extrinsic evidence to evaluate … the impact of a plan fiduciary's conflict of interest, as is required by the eighth [Booth] factor."  Helton, 709 F.3d at 354.

As such, the Plaintiff, will be allowed to investigate whether Mr. Egan was a Committee member.  Such discovery is limited, however, to seeking information and/or documents reflecting the identities of the members of the Committee during the period of the Committee's review of the Plaintiff's claim, namely between March 23, 2016, and June 15, 2016.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's "Motion to Lift the Stay on Discovery" [Doc. 25] is **GRANTED IN PART** in that limited discovery is allowed consistent with the terms of this Order and **DENIED IN PART WITHOUT PREJUDICE** in that discovery into the conflicts of interest issue

may be revisited should the limited discovery on this issue reveal that Mr. Egan was, in fact, a member of the Committee.

**IT IS, THEREFORE, FURTHER ORDERED** that the Plaintiff's Motion to Amend the Case Management Plan [Doc. 25] is **GRANTED IN PART** in that the parties have 90 days from the date of entry of this Order to complete the discovery allowed hereby.

**IT IS, THEREFORE, FURTHER ORDERED,** in light of the foregoing, that the dispositive motion deadline that was held in abeyance by the Court's previous Order [Doc. 27] is extended to that date 120 days after the entry of this Order.

**IT IS SO ORDERED.**

Signed: July 18, 2017

Martin Reidinger
United States District Judge